# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re **JURIAN W HOFMAN** and **DAWN L HOFMAN**, Debtors. | Case No. **12-60619-13** |
| **JURIAN W HOFMAN** and **DAWN L HOFMAN**, Plaintiffs. -vs- **HSBC BANK USA, NA, as Trustee for the registered holder of Nomura Home Equity Loan Inc Asset-backed Certificates, Series 2007-3**, Defendant. | Adv No. **12-00039** |

## MEMORANDUM OF DECISION

At Butte in said District this 25th day of February, 2013.

Pending in this adversary proceeding is the Motion for Summary Judgment (Docket No. 9) filed by Defendant HSBC Bank USA, NA ("HSBC"), as Trustee for the registered holder of Nomura Home Equity Loan Inc ("Nomura") Asset-backed Certificates, Series 2007-3, in which HSBC seeks dismissal with prejudice of the Plaintiffs/Debtors' complaint objecting to HSBC's

1

Proof of Claim.  HSBC filed with its Motion a Statement of Uncontroverted Facts, memorandum in support, and affidavits with supporting exhibits.  Plaintiffs/Debtors Jurian W. Hofman ("Jurian") and Dawn L. Hofman ("Dawn"), pro se, who filed their objection to HSBC's Proof of Claim seeking to disallow HSBC's secured claim in its entirety, filed their response (Dkt. 18) in opposition to HSBC's Motion, accompanied by 26 exhibits.  The Court has reviewed HSBC's Motion and Debtors' response, together with the accompanying exhibits, record and applicable law.  This matter is ready for decision.  For the reasons set forth below, and in particular the holding by the United States Court of Appeals for the Ninth Circuit as explained in *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912[1] (9th Cir. BAP 2011), this Court concludes that HSBC has satisfied its burden to show there is no genuine issue of fact, and that HSBC is entitled to judgment as a matter of law that it has standing to file its proof of claim as the party entitled to enforce the Deed of Trust signed by the Plaintiffs under Montana law.

This Court has jurisdiction of the above-captioned adversary proceeding and Chapter 13 case under 28 U.S.C. § 1334(a) & (b).  This adversary proceeding is a core proceeding to determine the validity of HSBC's lien and allowance/disallowance of claims under 11 U.S.C. §§ 157(b)(2)(B) and (K).  Plaintiffs' complaint objects to HSBC's secured claim asserting two claims for relief:  (1) Wrongful and Erroneous Foreclosure Representation as to Standing to Make Claim because Nomura is dormant or dissolved, because HSBC is overseeing the sale or trading of unregistered securities in violation of federal law, and HSBC is not the owner of the

---

[1]The Bankruptcy Appellate Panel of the Ninth Circuit held "[w]e hold that a party has standing to prosecute a proof of claim involving a negotiable promissory note secured by real property if, under applicable law, it is a 'person entitled to enforce the note' as defined by the Uniform Commercial Code."  450 B.R. at 902.

promissory note and therefore lacks standing; and, as a result, (2) Debtors seek expungement of HSBC's Proof of Claim which purports that it is secured by Debtors' residence at 2175 Oriole Drive, Missoula, Montana. This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. Rule 7052.

## FACTS & PROCEDURAL HISTORY

The Court may give evidentiary weight to sworn statements in the debtor's schedules, though the schedules are not necessarily and finally determinative of all facts contained therein. *Veal*, 450 B.R. at 921, *citing Campbell v. Verizon Wireless (In re Campbell)*, 336 B.R. 430, 436 (9th Cir. BAP 2005). The Debtors, pro se, filed a voluntary Chapter 13 petition on April 23, 2012, and filed their Schedules and Statement of Financial Affairs on May 7, 2012. On Schedule A Debtors list their joint interests in their residence at Lot 3, Block 3 of El Mar Estates, Phase II, a/k/a 2175 Oriole Dr. in Missoula, Montana, which they value at $175,384.14, and listed claims secured by the residence in the amounts stated of $162,521.09 and $14,452.00, respectively. Schedule C claims an exemption in the residence under Montana's homestead statutes in the amount of $162,521.09.

Schedule D lists HSBC as having a contingent, disputed claim incurred on 11/20/2006, in an amount stated of $175,384.14. The SOFA at item 6 ("Assignments and receiverships") lists "HSBC-Nomura" as assignee of property by assignment or settlement dated 1/26/2012.[2]

Debtors filed a Chapter 13 Plan and an amended Plan. HSBC and the Trustee filed objections, and confirmation was denied after hearing held on July 12, 2012. At that hearing the

---

[2]Also listed in item 6 is Alliance Title & Escrow Corp c/o Regional Trustee Services Corp. of Seattle, WA.

3

Court informed the Debtors that they must resolve the amount of HSBC's arrearage and claim prior to confirmation.

On August 6, 2012, Debtors filed their Objection to HSBC's Claim, even though HSBC had not filed a proof of claim as of that date. The Court entered an Order on August 7, 2012, in the Chapter 13 case treating Debtors' Objection as a complaint which needed to be served on HSBC, which commenced this adversary proceeding to determine HSBC's interest in property. HSBC filed its answer and affirmative defenses on August 22, 2012.

HSBC[3] filed its Proof of Claim No. 14 on October 5, 2012. As amended, Claim 14 asserts a secured claim in the amount of $170,539.62, secured by property with a stated value of $172,000.00. Claim 14 has several attachments, including a Fixed/Adjustable Rate/Balloon Note, Loan Modification Agreement, Deed of Trust ("DOT") covering Debtors' residence which is signed by Debtors, an Assignment of DOT from Mortgage Electronic Registration Systems, Inc. ("MERS") to HSBC, addenda, and an Allonge dated June 26, 2012, transferring the original note from Meritage Mortgage Corporation ("Meritage") to HSBC[4].

Debtors filed a further amended Plan to which objections again were filed by the Trustee and HSBC, and confirmation has been continued[5] so that this adversary proceeding can be decided. On November 15, 2012, HSBC filed its Motion for Summary Judgment and supporting

---

[3]Ocwen Loan Servicing, LLC, is named as the address where payments and notices should be sent regarding HSBC's Claim 14.

[4]HSBC's Claim 14 was disallowed as a late-filed claim by Order entered on January 10, 2013, in Case No. 12-60619-13 (Docket No. 65). The Court allowed HSBC an informal proof of claim in the amount of $10,547.05 secured by Debtors' residence, with that claim otherwise remaining subject to this adversary proceeding.

[5]The date of the hearing on confirmation currently is set for March 7, 2013.

4

memorandum, requesting that the Court grant its Motion and dismiss Plaintiffs' complaint with prejudice. Defendant also filed a Statement of Uncontroverted Facts, supporting affidavits of Samantha J. DeLage ("DeLage") and HSBC's attorney Joe Solseng ("Solseng"), and attached exhibits.

HSBC's Statement of Uncontroverted Facts sets forth the following:

1. On or about November 20, 2006, Dawn Hofman and Jurian Hofman made and delivered a Promissory Note to the original lender, Meritage Mortgage Corporation, in the principal amount of $146,720.00 (the "Note"). See Note attached as Exhibit "A" to the Affidavit of Samantha J. DeLage.

2. The Note was secured by a Priority Deed of Trust on the Property commonly known as 2175 Oriole Drive, Missoula, MT 59808 (the "Property"), legally described as:

> LOT 3 IN BLOCK 3 OF EL MAR ESTATES PHASE II, A PLATTED SUBDIVISION IN MISSOULA COUNTY, MONTANA, ACCORDING TO THE OFFICIAL RECORDED PLAT THEREOF.

(hereinafter the "Subject Property"). See Deed of Trust attached as Exhibit "B" to the Affidavit of Samantha J. DeLage.

3. Attached to the original Note are both an endorsement in Blank from the original lender, Meritage Mortgage Corporation, and an Allonge from Meritage Mortgage Corporation to HSBC. See Note attached as Exhibit "A" to the Affidavit of Samantha J. DeLage.

4. Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), solely as nominee for Meritage Mortgage Corporation, was the original beneficiary under the Deed of Trust. The Deed of Trust was recorded on November 21, 2006, under Recorder's No. 200630237, records of Missoula County, Montana. See Deed of Trust attached as Exhibit "B" to the Affidavit of Samantha J. DeLage.

5. On or about December 2, 2008, MERS executed an Assignment of Deed of Trust, transferring the beneficial interest in the Note and Deed of Trust to HSBC. The Assignment was recorded on December 22, 2008 under Recorder's No. 200827638, records of Missoula County, Montana. See Assignment of Deed

5

of Trust attached as Exhibit "C" to the Affidavit of Samantha J. DeLage.

      6. On or about April 23, 2012, Jurian W. Hofman and Dawn L. Hofman (hereinafter the "Debtors") filed the instant Chapter 13 bankruptcy as Petition No. 12-60619-RBK.

      7. On August 6, 2012, the Debtors filed an Objection to Claim against HSBC. The Court subsequently ordered that the Objection would be treated as a Complaint and it would proceed as an adversary action. See Docket No. 33 in Debtor's Bankruptcy Case No. 12-60619-RBK.

      8. HSBC filed its Proof of Claim in the Debtor's bankruptcy as Claim No. 14-1 on October 5, 2012. The Claim was amended that same day under Claim No. 14-2 to correct the attached documentation. See Proofs of Claim filed on Claims Register in Debtor's Bankruptcy Case No. 12-60619-RBK.

      9. HSBC Bank USA, NA, as Trustee for the Registered Holder of Nomura Home Equity Loan Inc. Asset-Backed Certificates, Series 2007-3 is the holder of and has possession of the original endorsed Note. See ¶ 8 of Affidavit of Samantha J. DeLage.

The affidavit of DeLage (Dkt. 11), wherein she states that she is employed by the current servicer of the loan and has personal knowledge of the loan documents, is accompanied by the above-described exhibits including a promissory note with an endorsement in blank and an allonge from Meritage to HSBC, a DOT subtitled "Trust Indenture Under the Small Tract Financing Act of Montana" ("STFA"), and the above-described assignment from MERS to HSBC as trustee for Nomura, of the DOT and "all notes and obligations therein described or referred to." Solseng's affidavit (Dkt. 12) describes his office's on-line search of the Delaware Corporations database and a printout dated October 17, 2012, which states that Nomura is a registered corporation.

Debtors filed a response to HSBC's Motion for Summary Judgment, and filed a list of 26

6

exhibits.  They did not file any affidavits explaining or providing foundation for their exhibits[6], which include not only loan documents but also several printouts from what appear to be business publications, articles search engines, a blog, printouts from the United States Securities and Exchange Commission ("SEC"), cases or case summaries, and copies of proofs of claim.  Debtors did not file a separate, short and concise "Statement of Genuine Issues" setting forth the specific facts which they assert establish a genuine issue of material fact precluding summary judgment in favor of the moving party, as required by Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(a)(2).  Mont. LBR 7056-1(a)(3) provides:  "Facts Admitted.  All material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party."

In the Ninth Circuit, pro se litigants are not excused from compliance with the rules.  *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP 2002).  Ignorance of court rules does not constitute excusable neglect, even if a litigant appears *pro se*.  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (*quoting Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

This Court is aware of its duty to construe pro se pleadings liberally, including pro se motions as well as complaints.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).  The Court has construed Debtors' complaint and response, and attachments, liberally.

---

[6]Debtors' Ex. 20 is an affidavit of a Lynn E. Szymoniak, dated May 3, 2010, before the instant adversary proceeding commenced, as expert in Case No. 09-0360-CH-D in the Michigan Circuit Court for the County of Berrien, discussing defects in mortgage assignments.  Ex. 20 makes no statements relevant to HSBC or the other parties to the loan and security documents in this adversary proceeding.

7

Debtors contend that they reasonably believe that certain newly discovered assignments of deed and HSBC's proofs of claim are important and introduce genuine issues of material fact which they state they outline further in their complaint. Having reviewed HSBC's Statement of Uncontroverted Facts, Debtors' complaint and response, and the parties exhibits, the Court deems the above-listed material facts in HSBC's Statement of Uncontroverted Facts admitted pursuant to Mont. LBR 7056-1(a)(2) because they are not controverted by the required Statement of Genuine Issues.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback*

8

*& Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Applying this standard, the Court finds and concludes that HSBC satisfied its initial

burden to identify those portions of the record which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d at 630. HSBC listed the above-quoted facts in its Statement of Uncontroverted Facts, and filed affidavits of persons with personal knowledge to provide foundation for attached exhibits including the note, DOT covering Debtors' residence, and assignments to HSBC, all of which corroborate HSBC's Statement of Uncontroverted Facts. The burden shifted to the Debtors opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d at 1103-04. Debtors failed to satisfy that burden when they failed to file a Statement of Genuine Issues as required by Mont. LBR 7056-1(a)(2).

       To demonstrate that a genuine factual issue exists the Debtors were required to produce affidavits which are based on personal knowledge, and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. Debtors produced no affidavits based on personal knowledge of the facts of the instant adversary proceeding in support of their objections, and many of their exhibits such as case summaries and articles clearly are hearsay and not admissible into evidence in this case. Debtors assert that factual disputes exist between the parties, but they cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48, 106 S.Ct. at 2510. Based upon Debtors' failure to show that there are genuine issues of material fact, the Court finds that there are no genuine issues of material fact, and the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

       **II. Standing.**

HSBC contends that it is the party entitled to enforce the claim based on the note and DOT signed by the Debtors under *Veal* and Montana law because of provisions in the note and addendum applying Montana law, the indorsement in blank and special indorsement from the original lender to HSBC by means of the allonge. With respect to Debtors' contentions that Nomura is dormant or dissolved, HSBC argues that Nomura is a valid entity based on the attachment to Solseng's affidavit, and that Debtors lack standing to assert issues involving the terms of the relevant Pooling and Servicing Agreement because they are not parties to the Pooling and Servicing Agreement, citing *Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 324 (1st Cir. BAP 2011).

Debtors' response incorporates the allegations of their complaint that Nomura is dormant and/or dissolved and HSBC is not the owner of the promissory note and therefore lacks standing to make its claim. HSBC's reply repeats that it is the current beneficiary of the DOT and holder of the original note.

In *Veal* the BAP held "that a party has standing to prosecute a proof of claim involving a negotiable promissory note secured by real property if, under applicable law, it is a 'person entitled to enforce the note' as defined by the Uniform Commercial Code." 450 B.R. at 902. The evidence shows that Meritage, not HSBC, was the initial payee of the note. Therefore, HSBC was required to demonstrate facts sufficient to establish its standing. *Veal*, 450 B.R. at 907 n. 11, 913. HSBC cannot rely on the evidentiary presumption of its Proof of Claim based upon F.R.B.P. 3001(f), even if this Court had not disallowed the Proof of Claim as late-filed, because if a claim is challenged on the basis of standing the creditor must first satisfy the standing requirement of Rule 3001(b) to avail itself of the presumptions contained in Rule

11

3001(f). *Veal*, 450 B.R. at 922.

Statement of Uncontroverted Fact No. 3 and Ex. A attached to DeLage's affidavit assert and demonstrate that Debtors signed the note, and Meritage indorsed the note both in blank and specifically to HSBC by Allonge dated November 20, 2006.

"Indorsement" means a signature made on an instrument for the purpose of negotiating the instrument. MONT. CODE ANN. ("MCA") § 30-3-203. An indorsement in blank is an indorsement that is not payable to an identified person. MCA § 30-3-204. Thus, an instrument indorsed in blank becomes payable to bearer and any person who possesses the instrument becomes its holder. MCA § 30-3-204(2). A person is entitled to enforce an instrument if he, she or it is the holder of the instrument. MCA § 30-3-301.

In this case, the note at Ex. A is endorsed in blank on page 6, and in addition the note was transferred by allonge from Meritage to HSBC. Thus, HSBC is the holder of the instrument and entitled to enforce it. MCA § 30-3-301. Further, even if HSBC was not the holder of the Note, HSBC could still be entitled to enforce the Note as "a nonholder in possession of the instrument who has the rights of a holder." *See* MCA § 30-3-301. As explained in *Veal*, 450 B.R. at 910-12:

> Contrary to popular opinion, these rules do not absolutely require physical possession of a negotiable instrument in order to enforce its terms. Rather, Article 3 states that the ability to enforce a particular note—a concept central to our standing inquiry—is held by the 'person entitled to enforce' the note. UCC § 3–301.
>
> * * *
>
> [T]he maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals should not care who

actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the "person entitled to enforce" the Note, the Veals should be content.

HSBC was not the initial payee of the Note, and so is required to demonstrate facts sufficient to show that it is a "person entitled to enforce" the Note, or is the agent of such a person. The Court finds and concludes that HSBC has demonstrated that it is a "person entitled to enforce" the note in satisfaction of MCA § 30-3-301 by blank indorsement and allonge in Ex. A.

Debtors offered no evidence to refute that HSBC is the holder of the Note, and MCA § 30-3-301 allows the holder of a note to enforce the note. Moreover, under MCA § 71-1-110 the "assignment of a debt secured by mortgage carries with it the security,"[7] and pursuant to MCA § 71-1-305, mortgage law applies to trust indentures.[8] The evidence shows that HSBC has ownership of the note by allonge transfer and blank indorsement, which under § 71-1-110 carried with it the security, and therefore HSBC is a person entitled to enforce the note under the UCC. *Veal*, 450 B.R. at 913.

HSBC's Statements of Uncontroverted Facts Nos. 4 and 5 establish the chain of title of the DOT signed by Debtors. Ex. B attached to DeLage's affidavit shows the DOT signed by Debtors under Montana's STFA on November 21, 2006, and names MERS as the beneficiary.

---

[7] *See First Nat'l Bank of Saco v. Vagg*, 65 Mont. 34, 212 P. 509, 510-11 (Mont. 1922).

[8] MCA § 71-1-305 provides: "A trust indenture is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property except to the extent that such laws are inconsistent with the provisions of this part, in which event the provisions of this part shall control. For the purpose of applying the mortgage laws, the grantor in a trust indenture is deemed the mortgagor and the beneficiary is deemed the mortgagee."

Ex. C attached to DeLage's affidavit is an assignment of the DOT from MERS to HSBC as trustee for Nomura, dated November 21, 2006, and the last sentence of Ex. C adds "Together with any and all notes and obligations . . ., the debt respectively secured thereby and all sums of money due and to become due thereon ...."

*Veal* discusses the common law rule that the transfer of a mortgage without the transfer of the obligation it secures renders the mortgage ineffective and unenforceable in the hands of the transferee. 450 B.R. at 915, 916. The BAP noted that some states have altered that rule by statute. *Id.* at 916-17 & n. 34. *Veal* applied Illinois law which followed the common law. *Id.* at 916. Montana is one of the states referred to in *Veal* at 916-17, which altered the common law by statute, in particular § 71-1-110. *See First Nat'l Bank of Saco v. Vagg*, 212 P. at 510-11.

In this case Montana law applies because the DOT is made under the SFTA, and paragraph 16 provides that the DOT shall be governed by the law of the jurisdiction in which the Debtors' residence in Missoula is located. Under Montana law, HSBC has shown that it is entitled to summary judgment as a matter of law because the evidence is uncontroverted that HSBC is both the owner of the note by indorsement and/or allonge shown on HSBC's Ex. A, and is assignee of the DOT from MERS shown by HSBC's Ex. C. Thus, HSBC would be entitled under Montana law, §§30-3-301 and 71-1-110, to enforce the note and assignment of the DOT.

Decisions of the state courts and the United States District Court for the District of Montana explain that Montana has enacted nonjudicial foreclosure statutes which changed the common law rule as it is described in *Veal*, 450 B.R. at 916-17. The DOT shown at HSBC's Ex. B, at page 12, includes a power of sale clause. The Montana Supreme Court described the right to a power of sale in *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 58, 734 P.2d

1203 (1987):

> Under the Small Tract Financing Act, instead of mortgages, trust indentures (sometimes called "deeds of trust" or "trust deeds") are authorized. Such instruments have the effect of transferring the title of the borrower to a private trustee to be held by the trustee to secure the performance of the obligation by the borrower. A power of sale is by the law granted to the trustee to be exercised after a breach of the obligation for which the trust transfer is security. Section 71-1-304(2), MCA. The trust indenture is considered to be a mortgage on real property, § 71-1-305, MCA, and provisions are made in the law for the method whereby a trustee may foreclose a trust indenture by advertisement and sale. Section 71-1-313, MCA.

In 2007 the Montana Supreme Court reiterated the procedural requirements from *Chunkapura* in *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶13-¶15, 340 Mont. 62, 67-68, ¶ 13-¶15, 172 P.3d 116 (2007):

> The Small Tract Financing Act of Montana (the Act) was originally introduced to reduce the strain on the financing of improvements upon small tracts, as explained in *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 734 P.2d 1203 (1987). Prior to passage of the Act, banks and investors were hesitant to invest in small tracts because when a loan financed by a standard mortgage went into default, funds were obstructed and possession of the property was prohibited for the statutory one-year period of redemption. *Chunkapura*, 226 Mont. at 57, 734 P.2d at 1205. The Act struck a compromise between investors and debtors whereby debtors gave up their rights to possession and redemption while lenders gave up their right to deficiency judgment upon default. *Chunkapura*, 226 Mont. at 57, 734 P.2d at 1205. The result was the trust indenture, whereby a trustee could avoid judicial proceedings and foreclose on property by advertisement and sale. Section 71–1–313, MCA. Under this option, the trustee is subjected to strict notice requirements before crying the sale, and the purchaser is entitled to possession of the property ten days after the sale. Sections 71–1–313, 315, 319, MCA. In sum, the Act streamlined and reduced obstacles to the foreclosure process.
>
> Under the Act, the indenture trustee's duties are those related to properly conducting the foreclosure sale. The primary duties are delivery of notice to the affected parties, §§ 71–1–314, 315, MCA, and to "sell the property at public auction to the highest bidder." Section 71–1–315(3), MCA. The trustee is also charged with disposing of the proceeds of the sale and is thereafter "discharged from all further responsibility...." Section 71–1–316, MCA. The statute imposes

15

> no other duties upon the indenture trustee.
>
> Knucklehead's attempt to import the duties of other trustees could well defeat the purpose of the Act by complicating its streamlined process for foreclosure of simple mortgages. In accomplishing this purpose, the Act prevents abuse of process by providing built-in safeguards, including strict notice requirements and the borrower's pre-sale right to cure, §§ 71–1–312, 313, MCA, which alleviate the need for imposition of additional trustee duties in order to fulfill the purposes of the Act. There is no indication that broader duties were contemplated for indenture trustees, and therefore we concur with the District Court's determination that Knucklehead's reliance on § 72–34–113, MCA, is misplaced.

*See also Deschamps v. Treasure State Trailer Court, Ltd.*, 2011 MT 115, ¶ 15, 360 Mont. 437, 441, ¶ 15, 254 P.3d 566 (2011).

Recently in *Joseph v. Bank of America N.A.*, 2012 WL 6100037 (D. Mont. 12/7/2012), the U.S. District Court, Hon. Richard F. Cebull, adopted a magistrate's findings and recommendations including that basic agency law applies to the STFA, and that Montana law permits a party to designate an agent to conduct nonjudicial foreclosure sales, and to do most acts for which the party is responsible, unless a contrary intention clearly appears. *Joseph* at *1, citing *Diehl v. ReconTrust Co., N.A.*, 2010 WL 2178513 (D. Mont. May 27, 2010), *adopting F & R* at, 2010 WL 2175894 (D. Mont. April 22, 2010); *see also Heffner v. Bank of America*, 2012 U.S. Dist. LEXIS 64668, at *11-12, 2012 WL 1636815 (D. Mont. May 8, 2012); MCA § 28-10-105(2).

Based on the decisions in *Joseph* and *Knucklehead Land Co.*, *ante,* and the absence of any provision in MCA §§ 71-1-313 and 71-1-315 that requires a trustee to own a beneficial interest in a note to initiate nonjudicial foreclosure, the Court finds that Montana has altered by statute the common law rule described in *Veal*, 450 B.R. at 916-17. MCA § 71-1-304(2)

additionally provides that "[w]hen a transfer in trust of an interest in real property is made to secure the performance of the obligation . . . , a power of sale is conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security." This power of sale is conferred on the trustee without the necessity of being a payee or a beneficiary, as the trustee by definition holds "legal title." MCA § 71-1-303(7). Furthermore, as discussed above even if Montana followed the common law rule, the evidence in this case shows that HSBC owns the payee's interest in the note and is beneficiary under the DOT. Thus, HSBC could enforce the DOT under the common law as well. *Veal,* 450 B.R. at 915-16.

      Lastly, the Court addresses the contentions in Debtors' complaint that HSBC is acting as trustee for Nomura, which they contend is dormant or dissolved and therefore HSBC is overseeing the sale or trading of unregistered securities in violation of federal law. HSBC argues that Debtors lack standing to assert issues involving the terms of the relevant Pooling and Servicing Agreement because they are not parties to the Pooling and Servicing Agreement.

      The First Circuit, in *Correia*, held that debtors lacked standing to assert breaches of a pooling and servicing agreement ("PSA"), in support of their claims to declare a mortgage assignment and foreclosure invalid, because the debtors failed to show that they were parties to or third party beneficiaries of the PSA's terms. 452 B.R. at 324; *see also Washington v. Saxon Mort. Servs. (In re Washington)*, 469 B.R 587, 531 (Bankr. W.D. Pa. 2012); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009) (holding that because party was not a third-party beneficiary of the PSA he lacked standing to object to any breaches of its terms; the investors who bought securities based upon the pooled mortgages were the parties with standing to object to defects in those mortgages resulting from failures to abide by the PSA). The same principle

applies in the instant adversary proceeding.

Solseng's affidavit identified an Ex. 1, which he explains is a printout from the Delaware Corporations database stating that Nomura is a registered corporation. The Debtors submitted no admissible evidence supported by affidavit in opposition to HSBC's Motion for Summary Judgment which creates a genuine issue of material fact whether Nomura is dormant or dissolved. Neither have Debtors submitted any evidence demonstrating that they are parties or third party beneficiaries of the Pooling and Servicing Agreements of which they argue that HSBC and/or Nomura are in violation. This Court finds and concludes that Debtors lack standing to challenge the chain of title to the DOT and note in this case based upon the Pooling and Servicing Agreements. *Correia*, 452 B.R. at 324.

Debtors' second claim for relief seeks expungement of HSBC's claim based upon its first claim for relief. This Court has concluded that HSBC has shown that there is no genuine issue of material fact and that HSBC is entitled to summary judgment as a matter of law dismissing Debtors' first claim for relief. Based on that dismissal, HSBC is entitled to dismissal of Debtors' derivative second claim for relief as well.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the above-captioned adversary proceeding and Chapter 13 case under 28 U.S.C. § 1334(a) & (b).

2. This adversary proceeding is a core proceeding to determine the validity of HSBC's lien and allowance/disallowance of claims under 11 U.S.C. §§ 157(b)(2)(B) and (K).

3. HSBC satisfied its burden to show there is no genuine issue of fact, and that HSBC is entitled to judgment as a matter of law that it has standing to file its proof of claim as the party

entitled to enforce the Deed of Trust signed by the Plaintiffs under Montana law.

    4.  Debtors lack standing to assert breaches of a trust agreement involving pools of loans because they failed to show that they were parties to the Pooling and Servicing Agreement or third-party beneficiaries thereunder.

    **IT IS ORDERED** a separate Order shall be entered granting HSBC's Motion for Summary Judgment; and a separate judgment shall be entered dismissing Debtors' complaint filed in this adversary proceeding, with prejudice.

    BY THE COURT

    /s/ Ralph B. Kirscher
    HON. RALPH B. KIRSCHER
    U.S. Bankruptcy Judge
    United States Bankruptcy Court
    District of Montana